UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOROTHY CLAIRE HOULE CALL,

                Plaintiff,

v.                                                                                           1:16-CV-1003
                                                                                                                     (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OFFICE OF PETER MARGOLIUS           PETER MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.            OONA M. PETERSON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 15, 16.).

Currently before the Court, in this Social Security action filed by Dorothy Claire Houle Call ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 12.) For the reasons set forth below, it is ordered that Plaintiff's motion is denied and Defendant's motion is granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born in 1966. (T. 248.) She completed the 9th grade. (T. 254.) Generally, Plaintiff's alleged disability consists of addiction, bi-polar disorder, and obesity. (T. 253.) Her alleged disability onset date is May 8, 2009. (T. 248.) Her date last insured is September 30, 2013. (T. 109.) She previously worked as a house cleaner. (T. 254.)

   B.  **Procedural History**

On February 5, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 248.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 22, 2014, Plaintiff appeared before the ALJ, Arthur Patane. (T. 40-62.) On October 23, 2014, ALJ Patane issued an unfavorable decision. (T. 19-39.) On June 13, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. (T. 24-33.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2013, and Plaintiff had not engaged in substantial

gainful activity since May 7, 2011, her established onset date. (T. 24.)[1] Second, the ALJ found that since the alleged onset date Plaintiff had the severe impairments of affective disorder, alcohol abuse in remission, and marijuana abuse. (*Id.*) Third, the ALJ found that since her alleged onset date Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 26-28.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels; however, Plaintiff could have "semi-low contact with coworkers and public, defined as having frequent, but not constant interaction." (T. 28.) Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a house/business cleaner as generally and actually performed. (T. 33.)

## II.　THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.　Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence in the record. (Dkt. No. 9 at 3-6 [Pl.'s Mem. of Law].)

### B.　Defendant's Arguments

In response, Defendant makes one argument. Defendant argues substantial evidence supports the ALJ's RFC determination. (Dkt. No. 12 at 5-18 [Def.'s Mem. of Law].)

## III.　RELEVANT LEGAL STANDARD

---

[1] Plaintiff filed prior applications. (T. 283.) On May 6, 2011, an ALJ issued an unfavorable decision and the AC denied review. (T.63-78, 79-84.) Therefore, the May 6, 2011 decision is binding and in the current case the ALJ only considered the issue of disability since May 7, 2011, the day after the date of the prior ALJ's decision.

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff argues that the ALJ's RFC determination cannot be supported by substantial evidence because the ALJ did not accord controlling weight, great weight, or significant weight to any medical opinion.  (Dkt. No. 9 at 5 [Pl.'s Mem. of Law].)  Plaintiff essentially argues that an ALJ cannot determine Plaintiff's RFC without the support of at least one medical opinion concerning those limitations.  Further, although Plaintiff outlines medical evidence in the record, Plaintiff's brief fails to specify which limitations in the record she contends the ALJ failed to incorporate in his RFC determination and how Plaintiff was harmed by the omission.

The Second Circuit has held that an RFC determination need not align with a specific medical opinion and may be based on the record as a whole.  *See Monroe v. Comm'r of Soc. Sec.,* No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017) (where the record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC a medical source statement or formal medical opinion is not necessarily required); *see Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.App'x. 29, 34 (2d Cir. 2013) ("the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity"); *see Pellam v. Astrue*, 508 Fed.App'x. 87, 90 (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes); *Matta v. Astrue*, 508 Fed.App'x. 53, 56-57 (2d Cir. 2013) (although the ALJ's conclusion may not perfectly correspond with any of the medical source opinions cited in the decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a

whole); *see also Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of treating physician's report). Therefore, the ALJ did not commit legal error in formulating an RFC that did not mirror a medical opinion in the record.  The ALJ's RFC determination was ultimately supported by the totality of the evidence in the record.

To be sure, Shannon Gearhart, M.D., opined that Plaintiff should avoid smoke, dust, or other known respiratory irritants (T. 757); however, the ALJ's RFC did not provide environmental limitations (T. 28).  In his determination the ALJ discussed Plaintiff's asthma and ultimately determined that it was not a severe impairment because it did not result in more than minimal limitations in her ability to perform basic work related activity.  (T. 25.)  The ALJ relied on Plaintiff's "persistent smoking" and examinations which documented generally good lung sounds and good air movement. (*Id.*)  The ALJ also discussed Dr. Gearhart's opinion and diagnostic testing.  (*Id.*) The ALJ afforded Dr. Gearhart's respiratory limitations "little weight" because they were non-specific and not consistent with objective evidence.  (*Id.*)  The ALJ stressed that pulmonary tests concluded that despite moderate obstruction, Plaintiff had significant improvement with treatment.  (*Id.*)

Indeed, the record indicated that despite her asthma, and against medical advice, Plaintiff continued to smoke cigarettes and marijuana.  (T. 661, 664-665, 667, 668, 673, 674, 676, 678, 680-681, 684-685, 776, 779, 785, 789, 791-792, 827-828.) Examinations in the record also generally indicated clear lungs.  (T. 661-662, 664-665, 667-668, 673, 676, 678, 785, 791-792, 827.)  The ALJ's physical RFC determination did not provide for respiratory limitations; however, the ALJ properly determined at step two

7

that Plaintiff's asthma did not result in more than minimal limitations in her ability to perform basic work related activities.  Therefore, despite Dr. Gearhart's opinion, substantial evident in the record supported the ALJ's determination.

Plaintiff also appears to suggest that evidence in the record supported greater mental limitations than imposed by the ALJ.  (Dkt. No. 9 at 3-5 [Pl.'s Mem. of Law].)  In formulating Plaintiff's mental RFC the ALJ considered mental health treatment notations from Columbia County Mental Health Center where Plaintiff received counseling from Jennifer Samuels, LCSW; treatment notations from Plaintiff's primary care provider Daniel Patel, M.D.; consultative examiner Alex Gindes, Ph.D.; State agency medical consultant, H. Ferrin; and Plaintiff's testimony.  (T. 30-32.)  As previously stated herein, an ALJ's RFC determination need not track one medical opinion.

The ALJ determined that Plaintiff could perform her past relevant work as a house/business cleaner.  (T. 33.)  This work is classified as unskilled work.  DOT 323.687-014.  Unskilled work is work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed."  SSR 83-10, 1983 WL 31251, at *7.  Additionally, basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see* also SSR 85-15, 1985 WL 56857.  The ALJ's determination that Plaintiff could perform unskilled work is supported by substantial evidence in the record.

Indeed, Ms. Samuels opined Plaintiff had "moderate" limitations understanding, remembering, and carrying out simple instructions. (T. 834.)[2] Plaintiff appears to argue that Ms. Samuels's opinion, that Plaintiff had moderate limitations, is indicative of greater restrictions than imposed by the ALJ. (Dkt. No. 9 at 4 [Pl.'s Mem. of Law].) However, the Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."). Dr. Gindes opined that Plaintiff could follow, understand, and perform simple tasks independently. (T. 766.) Dr. Ferrin opined Plaintiff could understand and remember instructions, and sustain attention and concentrations for tasks. (T. 106.) Although the ALJ afforded the various opinions "some" weight, the ALJ's determination that Plaintiff could perform unskilled work is clearly consistent with, and supported by, the totality of the opinions in the record.

Plaintiff summarizes evidence in the record indicating she had marked limitations in performing complex tasks (Dkt. No. 9 at 3-4 [Pl.'s Mem. of Law]); however, the ALJ limited Plaintiff to unskilled work which does not require Plaintiff to perform complex tasks. Therefore, the ALJ's RFC determination limiting Plaintiff to unskilled work is not inconsistent with opinions that Plaintiff had marked limitation in performing complex work.

---

[2] "Moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (T. 834.)

9

The ALJ further limited Plaintiff to "semi-low contact with coworkers and the public, defined as having frequent, but not constant interaction." (T. 28.) The ALJ determined that the record as a whole, including Plaintiff's activities, clinical findings and medical treatment supported his conclusion that Plaintiff had adequate social skills. (T. 32.) Although Ms. Samuels opined Plaintiff had marked limitations in her ability to deal with the public and supervisors, and Dr. Gindes opined Plaintiff was "not likely" able to relate adequately with others or deal with stress, the ALJ properly relied on other opinion evidence and Plaintiff's testimony in making his determination. (*Id.*); *see Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (ALJ had properly pointed to substantial evidence to support RFC determination including the conclusion of medical sources and plaintiff's testimony regarding her daily functioning).

Indeed, the ALJ stated he incorporated Ms. Samuels's opinion that Plaintiff had "moderate" limitations in her ability to interact appropriately with the public and interact appropriately with supervisors in his RFC determination. (T. 32.) As stated herein, a moderate limitation would not necessarily preclude the ability to perform unskilled work. The ALJ's determination is also consistent with the opinion of Dr. Ferrin who stated that Plaintiff "would benefit from an environment where she is precluded from intensive interaction with the public or tasks involving a high degree of stress, but appears capable of routine interactions with coworkers and supervisors, and able to manage basic changes and make routine decisions." (T. 106.)

Plaintiff's testimony also supports the ALJ's RFC determination regarding social interaction. Plaintiff reported that although she tried to do everything on the phone, she was able to manage administrative details for her aunt's estate and deal with Social

Services for her son.  (T. 664.)  Plaintiff testified at the hearing that she was able to work with others to advocate for her disabled son.  (T. 57.)  Plaintiff also reported that her anxiety was more manageable and she was able to "get off the couch and do things" even though she did not have the focus she would like to.  (T. 687.)

Overall, substantial evidence in the record supported the ALJ's determination that despite difficulties maintaining appropriate social interactions, Plaintiff could have "frequent" but not "constant" contact with coworkers, supervisors and the public.  Of note, according to the DOT, interaction with people in the occupation of housekeeper is listed as "Level 8 -Taking Instructions - Helping" and the degree is listed as "not significant."  DOT 323.687-014.  Level 8 is defined as "attending to the work assignment instructions or orders of supervisor. No immediate response required unless clarification of instructions or orders is needed. Helping applies to non-learning helpers."  DOT, App. B, 1991 WL 688701 (internal quotations omitted).  Therefore, based on the information provided in the DOT, the occupation of housekeeper requires an even lesser degree of social interaction than accounted for in the ALJ's RFC.

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's RFC determination was supported by substantial evidence in the record and the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 16, 2017

                                                   William B. Mitchell Carter
                                                   U.S. Magistrate Judge